[Cite as *State v. Cunningham*, 2018-Ohio-663.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

        Appellee

v.

DaMichael Cunningham, Jr.

        Appellant

Court of Appeals Nos. L-16-1248
L-16-1249

Trial Court Nos. CR0201502845
CR0201503135

**DECISION AND JUDGMENT**

Decided: February 23, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorneys, for appellee.

Sean P. Martin, for appellant.

* * * * *

**JENSEN, J.**

## I. Introduction

{¶ 1} This is a consolidated appeal of judgments of the Lucas County Court of

Common Pleas in case Nos. CR15-2845 and CR15-3135, sentencing appellant,

DaMichael Cunningham, to a total of 17 years and 5 months in prison for possession of cocaine, having weapons while under disability, illegal use of supplemental nutrition assistance benefits or WIC program benefits, and felonious assault.

## A. Facts and Procedural Background

### i. Facts Pertaining to Case No. CR15-2845

{¶ 2} On November 2, 2015, an indictment was filed with the trial court in case No. CR15-2845, charging appellant with one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree, one count of carrying concealed weapons in violation of R.C. 2923.12(A)(2) and (F), a felony of the fourth degree, one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, one count of tampering with evidence in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree, two counts of illegal use of supplemental nutrition assistance benefits or WIC program benefits in violation of R.C. 2913.46(B) and (D), a felony of the fifth degree, and one count of obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree. These charges stemmed from an incident that occurred on July 3, 2015. On that date, Toledo police conducted a traffic stop involving appellant. During the stop, appellant fled from the police on foot, and a pursuit ensued. During the pursuit, police noticed appellant discard several items, which were later retrieved and identified as a firearm and crack cocaine. Appellant was subsequently apprehended and arrested. During the arrest, officers seized a bag of marijuana and two Ohio Direction Food Assistance cards that did not belong to appellant.

2.

{¶ 3} At his arraignment, appellant pleaded not guilty to the foregoing charges, and the matter was set for trial. Following pretrial discovery and several continuances, appellant appeared before the trial court on May 9, 2016, and entered a plea of guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L.Ed. 2d 162 (1970), to one count each of possession of cocaine, having weapons while under disability, and illegal use of supplemental nutrition assistance benefits or WIC benefits. Pursuant to a written plea agreement, the remaining charges were dismissed by the state.

{¶ 4} Under the terms of the written plea agreement, appellant was eligible to receive up to 60 months in prison. Further, the written plea agreement, which was signed by appellant, states that no promises were made to appellant except those contained within the agreement. The agreement goes on to state those promises as follows: "State will recommend a Nolle as to Counts 2, 4, 6 and 7 at the time of sentencing. Weapon to be ordered destroyed."

{¶ 5} Prior to accepting appellant's *Alford* plea, the trial court engaged appellant in a thorough Crim.R. 11 colloquy. During the colloquy, the trial court reviewed the potential prison time appellant was facing as a result of his plea. After ensuring that appellant understood the rights he was waiving by virtue of his *Alford* plea, the trial court accepted appellant's plea and found appellant guilty. Thereafter, the trial court ordered the preparation of a presentence investigation report and set the matter for sentencing.

{¶ 6} One month later, appellant's counsel was granted leave to withdraw as counsel of record. Appellant was then appointed new counsel. One week prior to sentencing, newly appointed counsel filed a motion to withdraw appellant's *Alford* plea,

3.

arguing that appellant and members of his family were assured by previous counsel that appellant would receive community control in lieu of prison time if he pleaded guilty. Appellant and his sister testified at a subsequent evidentiary hearing on the motion to withdraw. Appellant's sister testified that she had spoken to appellant's original counsel prior to the plea hearing and that counsel informed her that appellant would receive a suspended prison sentence if he accepted the state's plea offer. At the conclusion of the evidentiary hearing, the court took the matter under advisement. On September 26, 2016, the court issued its order denying appellant's motion to withdraw his plea, finding that appellant knowingly, intelligently, and voluntarily waived his rights under Crim.R. 11 after consulting with competent counsel and being informed by the trial court of the potential sentence he faced if convicted of the charged offenses.

{¶ 7} Three days later, appellant appeared before the trial court for sentencing. At sentencing, appellant was ordered to serve 11 months in prison for possession of cocaine, 30 months in prison for having weapons while under disability, and 11 months in prison for illegal use of supplemental nutrition assistance benefits or WIC program benefits. The court ordered that the 11-month sentences be served concurrent to one another, but consecutive to the 30-month sentence, for a total prison sentence of 41 months. Further, the court ordered the 41-month sentence to be served consecutively to the sentence appellant received in case No. CR15-3135. Appellant's timely appeal followed.

### ii. Facts Pertaining to Case No. CR15-3135

{¶ 8} On December 18, 2015, appellant was indicted in case No. CR15-3135. In the indictment, appellant was charged with one count of murder in violation of R.C.

4.

2903.02(B) and 2929.02, an unspecified felony, and two counts of felonious assault in violation of R.C. 2903.11(A)(2) and (D), felonies of the second degree, along with firearm specifications on all three counts. The indictment stemmed from a shooting that occurred at Spigot Tavern on October 1, 2015, resulting in the death of appellant's friend, Keshaun Groom, and injuries to two others, Anthony and Kimberly Henderson.

{¶ 9} On January 20, 2016, appellant entered a plea of not guilty to the aforementioned charges, and the matter proceeded through discovery. Eight months later, a jury trial commenced, at which the state called several witnesses.

{¶ 10} As its first witness, the state called Anthony Henderson. Anthony is the son of the owner of Spigot Tavern. On the evening of October 1, 2015, Anthony went to Spigot Tavern with his wife, Kimberly, and his son, to watch a football game. According to Anthony, Spigot Tavern has a no-smoking policy. However, patrons of the bar are permitted to smoke either on the bar's patio or outside the entrance.

{¶ 11} As he was watching the football game, Anthony's friend, Mr. Smith, noticed Groom smoking inside the bar. Groom and appellant came to the bar together that evening, along with their friends, Jake Newman and Alan Derrington. Smith informed Groom that he needed to smoke outside the bar, and provided him with a cup of water to put out his cigarette. Groom disregarded Smith's instruction, prompting Anthony to order Groom to either go out onto the patio to smoke or to smoke outside the front entrance. According to Anthony's testimony, Groom initially refused to go outside, which led to a physical altercation. Ultimately, Groom and Newman were forced out of the front entrance of the bar and the door was locked behind them. Anthony proceeded to

5.

retrieve a handgun from the office and made his way toward the front of the bar. Meanwhile, Groom and Newman were attempting to reenter the bar through the locked entrance.

{¶ 12} After Anthony returned to the front of the bar, appellant began questioning him as to why he had Groom and Newman removed from the bar. Appellant began making his way toward the locked entrance. During this time, appellant was "a couple feet" from the front entrance, within an earshot of Groom and Newman. By now, Groom had brandished a handgun, and was tapping on a window next to the front entrance with the handgun and pointing it through the window.

{¶ 13} As appellant was making his way toward the entrance, Kimberly directed him to exit the bar out of the side door to avoid any further confrontation with Groom. Video surveillance depicts Kimberly in a discussion with appellant, during which she points in the direction of the side door. During this discussion, Anthony and Kimberly informed appellant that Groom had a firearm. Nonetheless, appellant disregarded Kimberly's instruction to exit out of the side door, and chose instead to unlock the front entrance door and exit the bar. As soon as appellant opened the door, Groom entered and began to shoot at Anthony, who returned fire. Anthony was struck in the thigh with one gunshot and Kimberly was also grazed by a bullet. Groom was mortally wounded. Groom was subsequently taken to the hospital where he succumbed to his injuries.

{¶ 14} As its second witness, the state called Kimberly to the stand. Kimberly generally corroborated Anthony's testimony. According to Kimberly, appellant indicated that Groom was his friend prior to exiting the bar. Kimberly then explained to appellant

6.

that Groom had a firearm, and appellant responded that he was "strapped too." Immediately thereafter, appellant turned from Kimberly, went to the front entrance, unlocked it, and exited the bar. According to Kimberly, Groom immediately entered the bar and began shooting.

{¶ 15} The state's remaining witnesses consisted of four police officers involved in the investigation of the incident, as well as the deputy coroner that conducted Groom's autopsy. According to the coroner's report, Groom died from two gunshot wounds.

{¶ 16} At the close of the state's evidence, defense counsel moved, without argument, for acquittal pursuant to Crim.R. 29. The court denied counsel's motion, and appellant rested without calling any witnesses. Thereafter, the parties presented their closing arguments. During its closing argument, the state displayed a 2013 case from this court, *State v. Taylor*, 6th Dist. Lucas No. L-11-1202, 2013-Ohio-5182, to explain the concept of proximate cause as it related to the felony murder charge. Defense counsel immediately objected to the state's display of the case in front of the jury. A bench discussion was held, after which the trial court sustained the objection, ordered the state to remove the case from the jury's view, and instructed the jury as follows: "Ladies and gentlemen, you are instructed to disregard the statement that was just made by [the state]."

{¶ 17} Following closing arguments, the jury received its instructions and began its deliberations. Thereafter, the jury returned with a verdict of guilty as to the felonious assault charges, but not guilty as to felony murder and the gun specifications. The trial court continued the matter for sentencing following the preparation of a presentence

7.

investigation report. At sentencing, the trial court ordered appellant to serve seven years in prison on each of the two felonious assault charges, to be served consecutively for a total of 14 years. Further, the court ordered appellant's 14-year sentence to be served consecutively with the 41-month sentence imposed in case No. CR15-2845, for a total of 17 years and 5 months. Thereafter, appellant filed a timely notice of appeal.

{¶ 18} On November 15, 2016, approximately two weeks after receiving appellant's notices of appeal from case Nos. CR15-2845 and CR15-3135, we sua sponte ordered the appeals consolidated.

## B. Assignments of Error

{¶ 19} On appeal, appellant assigns the following errors for our review:

1) Appellant's first attorney committed ineffective [assistance of] counsel by advising the Appellant to plea based on highly incompetent statements regarding possible outcomes in CR-2015-2845.

2) Trial Court erred by denying Appellant's motion to withdraw his *Alford* plea due to ineffective assistance of counsel of his first attorney [in] CR-2015-2845.

3) Appellant's Trial Counsel committed ineffective assistance of counsel by failing to articulate why the State of Ohio had not met the burden of proof during the Rule 29(A) Motion in CR-2015-3135.

4) The State of Ohio committed prosecutorial misconduct by introducing appellate case law and including the citing authority during closing arguments in CR-2015-3135.

8.

5) The State of Ohio failed to produce legally sufficient evidence to sustain convictions for Felonious Assault in CR-2015-3135.

6) Appellant's convictions of Felonious Assault fell against the manifest weight of the evidence in CR-2015-3135.

7) Appellant's Trial Counsel committed ineffective assistance of counsel by failing to file a Rule 29(C) Motion after the State of Ohio had not met the burden of proof and the jury returned an improper verdict in CR-2015-3135.

## II. Analysis

### A. Ineffective Assistance of Counsel

{¶ 20} In his first assignment of error, appellant argues that his trial counsel was ineffective in case No. CR15-2845 in advising him as to the likely sentence he would receive after accepting the state's plea offer.

{¶ 21} In order to demonstrate ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694. In cases in which the defendant enters a guilty plea, the defendant waives any appealable errors, including a claim of ineffective assistance, "unless he or she demonstrates that the alleged errors precluded him or her from entering a knowing, voluntary plea." *See State v. Ellis*, 6th Dist. Lucas No. L-15-1296, 2016-

9.

Ohio-8086, ¶ 35, citing *State v. Kocian*, 6th Dist. Ottawa No. OT-07-018, 2008-Ohio-74; *see also State v. Rice*, 6th Dist. Lucas No. L-06-1343, 2007-Ohio-6529, ¶ 17 ("Due to appellant's *Alford* plea, we are limited to an examination of whether appellant's counsel's performance caused his plea to be less than knowing and voluntary.").

{¶ 22} Here, appellant argues that trial counsel was incompetent in advising him to enter an *Alford* plea based upon the assertion that he would receive community control in lieu of prison upon entering the plea. Appellant further asserts that trial counsel did not review the plea form nor provide appellant with an opportunity to review it.

{¶ 23} Appellant's assertions concerning promises that were made to him by his trial counsel are discredited by a review of the plea colloquy in case No. CR15-2185. Prior to accepting appellant's *Alford* plea, the court questioned appellant as follows:

THE COURT: Your attorney said that you are going to enter a plea of guilty pursuant to the Supreme Court case of North Carolina versus Alford to count one in the indictment, which is possession of cocaine, a felony of the fifth degree, count three in the indictment, which is having weapons while under disability, a felony of the third degree, and count five in the indictment, which is illegal use of supplemental nutrition assistance benefits or WIC program benefits, a felony of the fifth degree. And in exchange for your plea the State of Ohio will nolle, or dismiss, counts two, four, six and seven at time of sentencing and the weapon will be destroyed. Is that your understanding of what you're doing here today?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with the amount of time you've had to speak with your attorney about this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with her advice and counsel?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did anyone force you to enter this plea?

THE DEFENDANT: No, ma'am.

THE COURT: Did anyone promise you anything to get you to enter this plea?

THE DEFENDANT: No, ma'am.

THE COURT: You're doing it voluntarily?

THE DEFENDANT: Yes, ma'am.

THE COURT: As I stated, in count one you're entering a plea to a felony of the fifth degree. Do you understand that that offense carries a basic prison term of six to 12 months?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT: Now, count three is a felony of the third degree. Do you understand that that offense carries a basic prison term of nine to 36 months?

THE DEFENDANT: Yes, ma'am.

* * *

11.

THE COURT: And count five is a felony of the fifth degree which carries a basic prison term of six to 12 months. Do you understand that?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT: So as you stand here today you're facing a total of up to 60 months in a state institution. Do you understand that?

THE DEFENDANT: Yes, ma'am.

{¶ 24} As is evident from the foregoing discussion, appellant was aware of the possibility of prison time prior to agreeing to plead guilty. Further, the written plea agreement reiterates that possibility, informing appellant that he could receive up to 60 months in prison. The court ensured that no promises were made to appellant except those contained within the agreement. According to the agreement, the state's only promise was that it would dismiss counts 2, 4, 6 and 7 of the indictment at the time of sentencing.

{¶ 25} In light of the thorough colloquy that took place in this case, paired with the clear terms of the written plea agreement that was signed by appellant, we find that appellant entered his *Alford* plea with full awareness that he could be sentenced to prison. In the final analysis, we find that the incompetence asserted by appellant did not preclude him from entering a knowing, voluntary plea. Therefore, appellant's ineffective assistance claim must fail.

{¶ 26} Accordingly, appellant's first assignment of error is not well-taken.

12.

## B. Motion to Withdraw *Alford* Plea

{¶ 27} In his second assignment of error, appellant asserts that the trial court erred in denying his motion to withdraw his *Alford* plea.

{¶ 28} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A motion made pursuant to Crim.R. 32.1 is left to the sound discretion of the trial court. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus. Thus, we review the trial court's decision denying appellant's motion under an abuse of discretion standard. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32. Abuse of discretion suggests that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 29} The Ohio Supreme Court has held that "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Appellate courts evaluate the trial court's decision based upon the following considerations:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the

13.

reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Murphy*, 176 Ohio App.3d 345, 2008-Ohio-2382, 891 N.E.2d 1255, ¶ 39 (6th Dist.), citing *State v. Griffin*, 141 Ohio App.3d 551, 554, 752 N.E.2d 310 (7th Dist.2001).

{¶ 30} A change of heart is an insufficient reason to permit withdrawal of the plea. *State v. Williams*, 6th Dist. Lucas Nos. L-15-1259, L-15-1260, 2016-Ohio-4905, ¶ 13.

{¶ 31} In this case, appellant contends that the trial court erred in denying his motion to withdraw his *Alford* plea because of the alleged ineffective assistance of trial counsel that we addressed and rejected above. Having found no merit to appellant's contention that he was rendered ineffective assistance by his trial counsel, we find that the trial court did not abuse its discretion in denying appellant's motion to withdraw his plea. Our conclusion is supported by an examination of the aforementioned factors. Specifically, we find that appellant was represented by counsel prior to entering his plea, and was thoroughly informed of his rights under Crim.R. 11 at the plea hearing. Moreover, the trial court gave full and fair consideration of the motion, rejecting appellant's argument after noting that appellant indicated that he understood the nature of the charges and the potential prison time he faced at the plea hearing. Finally, appellant

14.

does not offer any argument as to his innocence of the charges to which he pleaded. Rather, the record supports the inference that appellant simply had a change of heart and wished to withdraw his plea.

{¶ 32} Under these facts, the trial court's denial of appellant's motion to withdraw his *Alford* plea does not constitute an abuse of discretion. Accordingly, appellant's second assignment of error is not well-taken.

### C. Sufficiency, Manifest Weight, and Appellant's Crim.R. 29 Motion

{¶ 33} In his third assignment of error, appellant argues that his trial counsel in case No. CR15-3135 provided ineffective assistance in failing to articulate an argument to support his Crim.R. 29 motion for acquittal. In his fifth and sixth assignments of error, appellant argues that his convictions for felonious assault were not supported by sufficient evidence and were against the manifest weight of the evidence, respectively. Relatedly, appellant argues in his seventh assignment of error that his counsel was ineffective for failing to move for an acquittal under Crim.R. 29 after the jury returned its guilty verdict. Because these assignments are interrelated, we will address them together.

{¶ 34} Crim.R. 29 provides for an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction. "An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim." *State v. Reyes*, 6th Dist. Wood No. WD-03-059, 2005-Ohio-2100, ¶ 21, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995); *State v. Jones*, 6th Dist. Lucas No. L-08-1001, 2009-Ohio-6501, ¶ 32.

15.

{¶ 35} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The proper analysis under a sufficiency of the evidence standard is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 36} When reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶ 37} In case No. CR15-3135, appellant was convicted on two counts of felonious assault in violation of R.C. 2903.11, which provides, in relevant part:

> (A) No person shall knowingly do either of the following:
>
> * * *
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

16.

* * *

(D)(1)(a) Whoever violates this section is guilty of felonious assault.

{¶ 38} In this case, Groom was the individual who fired the shots that caused physical harm to Anthony and Kimberly. Clearly, this act constituted felonious assault. While appellant did not directly commit felonious assault, he was charged with felonious assault on a theory of complicity.

{¶ 39} "Under R.C. 2923.03, a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense." *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph two of the syllabus. "To aid is to assist. To abet is to incite or encourage." *State v. Sims*, 10 Ohio App.3d 56, 58, 460 N.E.2d 672 (8th Dist.1983). A person's mere association with a principal offender is not an aiding or abetting of the principal's act; there must be some active participation, assistance, or encouragement by the accomplice. *State v. Nievas*, 121 Ohio App.3d 451, 456, 700 N.E.2d 339 (8th Dist.1997). "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971).

{¶ 40} The evidence presented by the state in this case reveals that Groom and appellant came to the Spigot Tavern together on the night of the shooting. After the fight that preceded the shooting, appellant became upset with Anthony and Kimberly for removing Groom and his other friend, Newman, from the bar. While arguing with

17.

Anthony and Kimberly, appellant was asked not to exit out of the front entrance, which was locked at the time, because Groom was outside the door with a firearm. Meanwhile, Groom was using his handgun to knock on the window that was next to the door and visible from appellant's vantage point. Ultimately, appellant disregarded Kimberly's plea that he use the side door to exit the bar, opting instead to exit from the front door. By unlocking the front door, appellant assisted Groom in committing felonious assault, a result that was entirely avoidable and foreseeable in light of Groom's conduct outside the bar.

{¶ 41} Notwithstanding the foregoing evidence, appellant contends that the state failed to demonstrate that he used a deadly weapon during the commission of the offenses in question, as evidenced by the jury's rejection of the firearms specifications contained in the indictment. This argument is without merit because appellant was convicted of complicity to commit felonious assault. Given the complicity charge, "the jury was not required to find that appellant was the person who displayed, brandished, or used a firearm. It could have found that one of appellant's cohorts displayed, brandished, or used a firearm in the commission of the robbery." *State v. Franklin*, 7th Dist. Mahoning No. 06-MA-79, 2008-Ohio-2264, ¶ 99. Groom clearly utilized a firearm during the commission of the felonious assaults, a fact not disputed by appellant. The use of the firearm was evidenced by the gunshot wounds received by Anthony and Kimberly. Therefore, we do not find that the jury's rejection of the firearms specifications was inconsistent with its finding of guilt as to the felonious assault charges.

18.

{¶ 42} Ultimately, we find that the evidence outlined above is sufficient to support appellant's convictions for complicity to commit felonious assault. Moreover, we do not find that this case presents the exceptional case in which the evidence weighs heavily against the conviction. Consequently, we find that appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Because appellant's convictions were supported by sufficient evidence, we do not find that counsel's failure to articulate an argument to support the Crim.R. 29 motion prejudiced appellant. Likewise, we find that appellant was not prejudiced by counsel's failure to raise a Crim.R. 29(C) motion after the jury returned its verdict. Accordingly, appellant's third, fifth, sixth, and seventh assignments of error are not well-taken.

### D. Prosecutorial Misconduct

{¶ 43} In his fourth assignment of error, appellant argues that the state committed prosecutorial misconduct when it displayed case law to the jury during closing arguments in CR15-3135.

{¶ 44} The two fold test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and whether it prejudicially affected the substantial rights of the defendant. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). Thus, a reversal for prosecutorial misconduct is not warranted unless it is clear that the outcome of the trial would have been different but for the misconduct. *State v. Smith*, 14 Ohio St.3d 13, 15, 470 N.E.2d 883 (1984). In reviewing closing arguments for

19.

prosecutorial misconduct, we view the remarks in the context of the entire closing argument. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001).

{¶ 45} In support of his prosecutorial misconduct argument, appellant complains that the state displayed case law in front of the jury and attempted to read a portion of it prior to being instructed to take it down after the trial court sustained defense counsel's objection. Even assuming, arguendo, that the state's reading of case law to the jury was improper, appellant cannot demonstrate that it had an affect on the outcome of the proceedings. The trial court promptly ordered the state not to display the written decision in front of the jury. Further, the court provided a curative instruction, in which it ordered the jury to disregard the state's comments regarding the case law. Finally, and most importantly, the case that was being discussed by the state explained proximate cause in the context of a felony murder charge. The fact that appellant was acquitted on the murder charge makes it clear that the state's conduct had no prejudicial bearing on appellant.

{¶ 46} Accordingly, appellant's fourth assignment of error is not well-taken.

### III. Conclusion

{¶ 47} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

20.

L-16-1248 and L-16-1249
State v. Cunningham, Jr.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                                    JUDGE

James D. Jensen, J.

                                                            _____
Christine E. Mayle, P.J.                                    JUDGE
CONCUR.

                                                            _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.