**The STATE of Ohio, Appellee,**

v.

**MURPHY, Appellant.**

[Cite as *State v. Murphy,* 176 Ohio App.3d 345, 2008-Ohio-2382.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–07–041.

Decided May 16, 2008.

Mark E. Mulligan, Ottawa County Prosecuting Attorney, and Lorrain Croy, Assistant Prosecuting Attorney, for appellee.

Thomas Stoll, for appellant.

SINGER, Judge.

{¶ 1} Appellant appeals the judgment of the Ottawa County Court of Common Pleas, denying his motion to withdraw his guilty plea. Because we conclude that the trial court abused its discretion, we reverse and remand.

{¶ 2} On June 17, 2006, a township police officer observed an eastbound pickup truck drive off the road several times. The officer stopped the pickup. When he approached the vehicle, he detected a strong odor of an alcoholic beverage. When he asked the driver, appellant Tim E. Murphy, whether he had been drinking, appellant responded, "a couple." The officer then requested that appellant perform a series of field sobriety tests, all of which appellant failed. An inquiry into appellant's record revealed multiple prior intoxicated-driving convictions.

{¶ 3} Appellant was indicted for operating a motor vehicle while under the influence of alcohol ("OMVI") in violation of R.C. 4511.19(A)(1)(a). The indictment included a specification that appellant had been previously found guilty six times of operating a vehicle while intoxicated. On January 4, 2007, appellant pleaded not guilty. On March 21, 2007, however, appellant agreed to withdraw his not-guilty plea and plead guilty to the indictment, pursuant to an agreement in which the state would drop related charges in the municipal court.

{¶ 4} During the plea colloquy, the trial court questioned appellant regarding the plea agreement:

{¶ 5} "[THE COURT]: Would you tell me in your own words, please, what your [plea] agreement is?

{¶ 6} "[APPELLANT]: My agreement was for [a community based drug and alcohol treatment facility,] CROSSWAEH.

{¶ 7} "[APPELLANT'S TRIAL COUNSEL]: No.

{¶ 8} "[APPELLANT]: What is he talking about?"

{¶ 9} (Conference held off the record between appellant and his trial counsel).

{¶ 10} "[APPELLANT]: Yes, I do now understand it, Your Honor.

{¶ 11} "[THE COURT]: What is the agreement?

{¶ 12} "[APPELLANT]: The agreement is for dismissing the open container and fourth degree felony for the DUI.

{¶ 13} "[THE COURT]: Open container?

{¶ 14} "[PROSECUTOR]: The State is going to dismiss those Municipal Court cases as part of the plea.

{¶ 15} "[THE COURT]: All right. And then you are pleading to the entire indictment here, including the specifications?

{¶ 16} "[APPELLANT]: Yes, Your Honor.

{¶ 17} "[THE COURT]: Is that correct, Mr. Schimmel [appellant's trial counsel]?

{¶ 18} "[APPELLANT'S TRIAL COUNSEL]: That is correct.

{¶ 19} "[THE COURT]: Ms. Croy [prosecutor]?

{¶ 20} "[PROSECUTOR]: Yes, it is.

{¶ 21} "[THE COURT]: * * * I heard the word CROSSWAEH, which compels me to ask whether there has been any representations to [appellant] regarding what the punishment will be in this case?

{¶ 22} "[APPELLANT'S TRIAL COUNSEL]: There have been no agreements, Your Honor.

{¶ 23} "[THE COURT]: *CROSSWAEH is a possibility,* but the Court has not agreed that it would sentence [appellant] to CROSSWAEH.

{¶ 24} "[APPELLANT'S TRIAL COUNSEL]: Right.

{¶ 25} "[THE COURT]: Do you understand that?

{¶ 26} "[APPELLANT'S TRIAL COUNSEL]: Yes, I do.

{¶ 27} "[APPELLANT]: Yes." (Emphasis added.)

{¶ 28} The court continued the colloquy by explaining the elements of the charge and the specification that the state would have had to prove beyond a reasonable doubt if the case had gone before a jury. Next, the court detailed the possible penalties; the court stated, "There is a mandatory term from one to five years in the State Prison System. You are not eligible for probation. You are not later eligible for judicial release. If I give you, or I must give you, at least one year. I could give you up to five years. But whatever I do give you must be served completely without any possibility of probation or judicial release. That is a mandatory term of imprisonment." Appellant indicated that he understood.

{¶ 29} The court continued by explaining that it could sentence appellant immediately. Finally, after determining that appellant understood that he was waiving specified constitutional rights, the court accepted appellant's guilty plea and ordered a presentence investigation.

{¶ 30} During his presentence investigation interview, appellant was informed that he was ineligible for CROSSWAEH. Because of this discovery, on May 4, 2007, the date originally scheduled for sentencing, appellant moved to withdraw his guilty plea pursuant to Crim.R. 32.1. Appellant argued that his primary motivation for entering a guilty plea was that he wished to participate in CROSSWAEH for six months in lieu of serving six months of his sentence. Appellant maintained that the trial court stated during the plea colloquy that CROSSWAEH was a possibility, and had he known that he was ineligible for CROSSWAEH, he would not have entered a guilty plea.

{¶ 31} The trial court held a hearing on appellant's motion to withdraw his guilty plea. The state opposed appellant's motion, contending that the plea agreement clearly stated that appellant could not change his plea once he entered into the agreement and that appellant's rethinking his agreement was not a reasonable and legitimate basis for withdrawal of the plea. The court reviewed the transcript of the plea colloquy and concluded that the possible sentences were clearly spelled out during the colloquy. The trial court found that there was "no possibility for misunderstanding" and denied appellant's motion to withdraw his plea. The court did not address its incorrect statements regarding appellant's eligibility for community placement. Appellant was sentenced on August 31, 2007.

{¶ 32} Appellant now presents two assignments of error:

{¶ 33} "I. The trial court erred and abused its discretion in denying appellant's pre-sentencing motion to withdraw his guilty plea.

{¶ 34} "II. Appellant did not receive the effective assistance of counsel in entering a guilty plea and therefore his constitutional rights were violated."

{¶ 35} In support of his first assignment of error, appellant points to the fact that the court incorrectly informed him that he was eligible for a community-based program during his plea colloquy. Accordingly, appellant claims that the trial court abused its discretion in denying his motion to withdraw a guilty plea.

{¶ 36} Crim.R. 32.1 provides:

{¶ 37} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 38} While a presentence motion to withdraw a guilty plea "should be freely and liberally granted[,] * * * a defendant does not have an absolute right to withdraw a plea prior to sentencing." *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715. "[T]he trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. Further, the trial court's decision is reviewed under an abuse-of-discretion standard. Id. An abuse of discretion is more than an error of judgment or a mistake of law; the term connotes that the court's attitude is arbitrary, unreasonable, or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 39} "Some of the factors that are weighed in considering the trial court's decision on a presentence motion to withdraw a plea are as follows: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge." *State v. Griffin* (2001), 141 Ohio App.3d 551, 554, 752 N.E.2d 310. See also *State v. Klotz*, 6th Dist. No. WD–04–079, 2005-Ohio-3864, 2005 WL 1793755, ¶ 15; *State v. Dellinger*, 6th Dist. No. H–02–007, 2002-Ohio-4652, 2002 WL 31002813, ¶ 18.

{¶ 40} The record is clear that at the time of the plea colloquy, appellant, appellant's counsel, the court, and likely the prosecutor believed that a community-based treatment sentencing option was available. The content of the colloquy reveals that the availability of this option was important to appellant. Whether this importance was because appellant wished to spend part of his incarceration in what he perceived was a less restrictive environment or because he genuinely wished for an opportunity for substance-abuse treatment is immaterial. It is not unreasonable that appellant valued this portion of the court's sentencing options. Consequently, when it was determined that the existence of this option was erroneous, it was reasonable that appellant sought to undo the plea agreement.

{¶ 41} Concerning prejudice that this election might visit upon the state, "prejudice to the state [must be] articulated and will not be presumed." *Griffin*, 141 Ohio App.3d at 554–555, 752 N.E.2d 310. The state has not articulated any specific prejudice that it would encounter if appellant's motion is granted.

{¶ 42} Although the regularity of the hearing that the trial court held on appellant's motion to withdraw is not at issue, the court did fail to address

appellant's argument regarding the court's erroneous statement that a community sentencing option was a possibility. The timing of the motion was reasonable; appellant made the motion prior to sentencing, immediately after he discovered that he was not eligible for community control. Appellant had an important reason for making the motion. Eligibility for community control is a significant factor in making a plea agreement, as evidenced by the requirement in Crim.R. 11 that a court must inform a defendant of his eligibility for community control during a plea colloquy. Crim.R. 11(C)(2)(a).

{¶ 43} After applying the *Griffin* factors to this matter, we conclude that they weigh in favor of allowing appellant to withdraw his plea. Consequently, the trial court's decision to deny appellant's motion to withdraw his plea was unreasonable. Accordingly, appellant's first assignment of error is well taken.

{¶ 44} Our decision in appellant's first assignment of error renders appellant's second assignment of error moot.

{¶ 45} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is reversed and vacated. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.

Judgment reversed
and vacated.

HANDWORK, J., dissents.

HANDWORK, Judge, dissenting.

{¶ 46} This case compels us to once again examine that seemingly well understood, yet mysteriously elusive, term "abuse of discretion." What is it, what does it mean, and how shall it be examined and evaluated? Presumably, courts of appeals have rules and guidelines established to answer these questions.

{¶ 47} I feel compelled to re-ask these questions, however, and to invite re-evaluation of this term in light of the majority decision, as I truly feel that the majority, when considering the facts of this case, failed to understand and to apply a proper analysis as it reviewed the trial court's decision. Certainly the abuse-of-discretion standard was crafted, at the very least, as a standard of review because it was believed that trial judges should be free to make appropriate, lawful decisions without the fear of being second-guessed by appellate tribunals. In this case, the majority has inappropriately attempted to discern what the participants in the hearing in question "believed," see ¶ 40 above, what may or may not have been important to the participants, and what may or may not have been reasonable to appellant. They have subjectively substituted their

judgment for what they think happened in place of Judge Moon's careful analysis of the entire process that he participated in and was in the best position to understand.

{¶ 48} To suggest, as the majority does, that the trial judge abused his discretion when denying appellant's motion to withdraw his plea of guilty—that is, that his judgment was arbitrary, unreasonable, and clearly erroneous—will cause the trial judges in this district to constantly look over their shoulder and ask, "What more must I do when making a discretionary decision to avoid reversal?"

{¶ 49} An "abuse of discretion" is a standard that has long been used in the law. That extremely high standard is defined in the Law.Com Dictionary as:

{¶ 50} *"[A] polite way of saying a trial judge has made such a bad mistake ('clearly against reason and evidence' or against established law) during a trial or on ruling on a motion and that a person did not get a fair trial.* * * *
Examples of 'abuse of discretion' or judges' mistakes include not allowing an important witness to testify, making improper comments that might influence a jury, showing bias, or making rulings on evidence that deny a person a chance to tell his or her side of the matter. *This does not mean a trial or the judge has to be perfect, but it does mean that the judge's actions were so far out of bounds that someone truly did not get a fair trial.* Sometimes the appeals courts admit the judge was wrong, but not wrong enough to have influenced the outcome of the trial, often to the annoyance of the losing party. In criminal cases abuse of discretion can include sentences that are grossly too harsh. In a divorce action, it includes awarding alimony way beyond the established formula or the spouse's or life partner's realistic ability to pay." (Emphasis added.) http://legal-dictionary.thefreedictionary.com (2008).

{¶ 51} Let us now look at the meaning of the words in question to discern the true import of the legal standard applied in this cause. As applicable to the case before us, "discretion" is defined by Webster as the "power of free decision or latitude of choice within certain legal bounds." Merriam–Webster Online Dictionary. 2008.http://www.merriam-webster.com (30 April 2008). "Abuse" means "corrupt practice or custom" and/or "improper or excessive use or treatment." Id. If an act is denoted as "arbitrary," it indicates that the act is "marked by or resulting from the unrestrained and often tyrannical exercise of power" and/or exists or comes about "seemingly at random or by chance or as a capricious and unreasonable act of will." Id. The use of the term "unreasonable" refers to behavior or thought that is "not governed by or acting according to reason." Id. Finally, someone acts in an unconscionable manner when he or she is "not guided or controlled by conscience" or acts or thinks in a way that is "shockingly unfair or unjust." Id.

{¶ 52} Applying these definitions to the case under consideration, we must therefore ask ourselves: When making a free decision within the latitude of legal bounds, did Judge Moon utilize corrupt, improper, or excessive practices in either a tyrannical or random and capricious way that was not governed by reason or controlled by conscience? Was the judge's decision shockingly unfair or unjust? The answer should be a resounding "No." I am astounded that the majority could find in this case that the trial judge's decision met the foregoing definitions, but can only suggest that if Judge Moon's decision is indeed an abuse of discretion, the Supreme Court of Ohio would benefit the bench and bar by revisiting the meaning of the legal standard denoted as "abuse of discretion" and, thereby, provide appellate courts with a road map to navigate this area of the law.

{¶ 53} In analyzing whether Judge Moon acted within the bounds of his discretion, we must remember that he was present and participated in all proceedings below, viewed the demeanor of and engaged in a dialogue with appellant, and listened to all of the words spoken by appellant and his trial counsel. The following excerpt [1] from the change-of-plea hearing leads to a better understanding of his thought process:

{¶ 54} "Q: Would you tell me in your own words, please what your agreement is?

{¶ 55} "A. My agreement was for CROSSWAEH [a community based correctional facility].

{¶ 56} "Mr. Schimmel [appellant's attorney]: No.

{¶ 57} "[Appellant]: What is he talking about?

{¶ 58} "(Attorney—client conference held off the record)

{¶ 59} "[Appellant]: Yes, I do now understand it, Your Honor.

{¶ 60} "Q. What is the agreement?

{¶ 61} "A. The agreement is for dismissing the open container and the fourth degree felony for the DUI.

{¶ 62} "The Court: Open container?

{¶ 63} "Ms. Croy [The prosecutor]: The state is going to dismiss those Municipal Court cases as part of the plea.

{¶ 64} "Q. All right. And then you are pleading to the entire indictment here, including the specification?

---

1. These excerpts are also provided in the majority's decision, but repetition is necessary to an understanding of my dissent.

{¶ 65} "A. Yes, your Honor.

{¶ 66} "The Court: Is that correct, Mr. Schimmel?

{¶ 67} "Mr. Schimmel: That is correct.

{¶ 68} "The Court: Ms. Croy?

{¶ 69} "Ms. Croy: Yes, it is.

{¶ 70} "The Court: If I could have that document back. I heard the word CROSSWAEH, which compels me to ask whether there has been any representations to the Defendant regarding what punishment will be in this case?

{¶ 71} "Mr. Schimmel: There have been no agreements Your Honor.

{¶ 72} "The Court: CROSSWAEH is a possibility, but the court has not agreed that it would sentence the Defendant to CROSSWAEH.

{¶ 73} "Mr. Schimmel: Right.

{¶ 74} "The Court: Do you understand that?

{¶ 75} "Mr. Schimmel: Yes, I do.

{¶ 76} "[Appellant]: Yes.

{¶ 77} "Q: Now this agreement is actually your written plea of guilty to Count 1 of the indictment and also the specification. However, I must still take your plea in open court on the record today * * *."

{¶ 78} Judge Moon then continued by providing appellant with information concerning his sentence:

{¶ 79} "Q: All right. The next element is that you have previously been convicted of or pleaded guilty to five or more violations of either the State Code Section for driving while under the influence or a Municipal Ordinance governing the same matters or the laws of another state involving the same matter, do you understand that?

{¶ 80} "A. Yes, I do, Your Honor.

{¶ 81} "Q. Now that is reflected also in the specification, which indicates that you had been either convicted of or pleaded guilty to five or more equivalent offenses, do you understand that?

{¶ 82} "A. Yes, I do.

{¶ 83} "Q. All right. Now the possible penalties, first of all we will start with the specification. There is a mandatory term of from one to five years in the State Prison System. You are not eligible for probation. You are not later eligible for judicial release.

{¶ 84} "If I give you, or I must give you at least one year. I could give you up to five years. But whatever I do give you must be served completely without any possibility of probation or judicial release. That is a mandatory term of imprisonment. Do you understand that?

{¶ 85} "A. Yes, Your Honor."

{¶ 86} Moreover, at the hearing to withdraw appellant's guilty plea, the following occurred. First, the court read that section of the change-of-plea hearing, as set forth immediately above, in which he informed appellant of the fact that, due to the specification, he was required to impose a mandatory prison sentence. Judge Moon continued:

{¶ 87} "Then I went on regarding fines and the forfeiture of the vehicle. Then at the top of page 8 [of the transcript of the change of plea hearing], court says, 'I must require you to attend an alcohol or drug addiction program at your own expense after you are released from whatever prison term you might receive. And I have to suspend your driver's license for at least three years, but could suspend it for up to five.'

{¶ 88} "There is just no room for misunderstanding this transcript. Now, before the defendant is sentenced, the rule says that withdrawal of the guilty plea should be freely given; however, case law says, if the defendant states no reason at all for wanting to change his plea or if his reasons are spurious or inappropriate, the court doesn't have to do it.

{¶ 89} "And, there is just no possibility for misunderstanding here. The plea will change—or will stand, and we'll set, we'll set a new sentencing date. * * *."

{¶ 90} A reading of these portions of the transcripts of the change-of-plea hearing and the hearing on appellant's motion to withdraw his guilty plea reveals that while Judge Moon was mistaken when he stated CROSSWAEH was a possibility,[2] but not a probability, at the plea hearing, his emphasis was on the fact that there were no agreements to that effect. Further, at the hearing on the motion to withdraw the guilty plea, it is clear that Judge Moon carefully reviewed what happened some months previous and found that the appellant could not have been mistaken about what he faced when sentenced. Therefore, the majority's suggestion that at the end of that hearing, appellant did not know that he faced a prison term, and only a prison term, truly strains credulity.

---

2. A "possibility" is defined as "the condition or fact of being possible." Merriam–Webster Online Dictionary. http://www.merriam-webster.com (30 April 2008). In turn, "possible" means "being something that may or may not occur." Merriam–Webster Online Dictionary. http://www.merriam-webster.com (30 April 2008). Thus, the use of the word "possibility," in and of itself, indicated to appellant that he may not be sentenced to serve his time at CROSSWAEH.

{¶ 91} This court is not in the position to speculate as to what was in the mind of the defendant and his counsel at the close of the appellant's change of plea hearing, nor should we substitute our judgment for that of a trial judge when the record is clear that a careful, thoughtful, and lawful decision was made.

{¶ 92} This effort by appellant amounts, in my opinion, to little more than a change of heart by one who is no rookie in the criminal justice system and is now seeking to avoid the ultimately unavoidable jail time he faces.

{¶ 93} Judge Moon made the correct call in this case.

{¶ 94} I would affirm.