[Cite as *State v. Hartman*, 2018-Ohio-4452.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                          Court of Appeals No. H-17-014

        Appellee                              Trial Court No. CRI 2016-0812

v.

Fredrick L. Hartman                          **DECISION AND JUDGMENT**

        Appellant                             Decided:  November 2, 2018

* * * * *

James Joel Sitterly, Huron County Prosecuting Attorney, and
Bambi S. Couch, Assistant Prosecuting Attorney, for appellee.

Geoffrey L. Oglesby, for appellant.

* * * * *

**MAYLE, P.J.**

**Introduction**

{¶ 1} The defendant-appellant, Frederick Hartman, appeals a trial court decision denying his motion to withdraw his guilty plea entered in the Huron County Court of Common Pleas.  In support of his appeal, Hartman claims that he did not knowingly

plead guilty because he was pressured by his trial counsel to accept the terms of a plea and because he was emotionally distraught over the imminent death of his wife. He maintains his innocence and argues that he did not receive a fair hearing on the motion to withdraw his guilty plea. We conclude that the trial court's decision to deny Hartman's motion was unreasonable because the record establishes that he asserted his innocence just prior to, and after, pleading guilty and because the state would not have been prejudiced by allowing Hartman to withdraw. As set forth below, we reverse the decision of the trial court and remand the case with the order that the trial court vacate the plea agreement.

## A. Facts and Procedural Background

{¶ 2} Hartman lives on a 68-acre cattle ranch in New London, Ohio. According to the record, the victim in this case entered Hartman's property on January 20, 2017, around 1:00 a.m., while he was hunting for raccoons with his dog. The dog had just run onto Hartman's property, and the victim ran after it. From inside his home, Hartman saw the light emitted from the victim's flashlight. At the time, the victim was approximately 875 feet from Hartman's house. Hartman went outside— armed with some type of gun—and walked toward the light. Hartman yelled, "[w]hat are you doing?" The victim responded that he was just looking for his dog, and Hartman replied, "you're a dead SB." Hartman then fired multiple shots. Two of the shots struck the victim's light and two struck the victim: one in his side, and one in his neck. Based upon the sound of the

2.

shots, the victim opined that Hartman "definitely" fired a shotgun, although he described the shots that hit him as "bee-bees" and "pellets."

{¶ 3} Deputies from the sheriff's department found Hartman that night behind his house and "disarmed him" of a .22 caliber revolver, a .380 pistol, and a large blade knife. They also found a 12-gauge Remington shotgun leaning up against a tree near the location where the victim was shot. It did not have dew on it, and it had a spent shell casing in the chamber and smelled as though it had just been fired. Hartman told the deputies that he intended to fire "warning shots" only, by aiming a little to the left and a little to the right of the victim.

{¶ 4} On January 20, 2017, Hartman was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony in the second degree, and one count of negligent assault, in violation of R.C. 2903.14(A), a misdemeanor of the third degree. The felonious assault charge included a firearm specification, pursuant to R.C. 2941.145. At his arraignment, Hartman was represented by counsel and pled not guilty.

{¶ 5} Hartman's original counsel withdrew from the case, and his new counsel, Nancy Jennings, filed a substitution of counsel on April 27, 2017. According to Hartman, the two of them discussed a proposed plea whereby Hartman would plead guilty to Count 1 (felonious assault) in exchange for the state's dismissal of the firearm specification attached thereto and dismissal of Count 2 (negligent assault). A hearing was scheduled for July 26, 2017. At that time, Jennings notified the court that she would have to withdraw from the case because she had accepted new employment and could not

3.

represent criminal defendants. A third attorney, Esteban Callejas, substituted for Jennings.

{¶ 6} A change of plea hearing took place on August 22, 2017. While being questioned by the court, Hartman said that he had not reviewed the written plea agreement. The court went into recess so that he and Callejas could review it. Once the hearing resumed, the court conducted a Crim.R. 11 hearing. After Hartman was advised of the maximum penalty, the effect of his plea, his constitutional rights, and the evidence against him, the following exchange took place between the court and Hartman:

Q. All right. Mr. Hartman, you had the opportunity to hear [the prosecutor] set forth the factual basis for the charge. Do you agree with what she stated is true?

A. I slipped - -

MR. CALLEJAS [Hartman's counsel]: Your Honor, we don't have a factual --

A. I was trying to get away from him.

MR. CALLEJAS: * * * Your honor, we accept the recitation set forth by the State of Ohio.

BY THE COURT:

Q. And, do you agree with that Mr. Hartman?

A. Yes.

Q. All right. Then with regard to Count 1, the charge of felonious assault being a felony of the second degree, how do you wish to plead?

A. Just trying to get away from him. Guilty, I guess.

Q. All right. You can't guess. It's either guilty or not guilty at this state.

A. Guilty.

* * *

Q. Do you have any questions at this time?

A. Just trying to get away from him.

{¶ 7} The court accepted Hartman's plea and found him guilty. It ordered a presentence investigation and continued the matter for sentencing.

{¶ 8} Sentencing was scheduled for October 4, 2017. At the beginning of the hearing, Hartman's counsel (Callejas) requested to withdraw from the case due a breakdown in the relationship, and Hartman's new counsel (Johnathon McGookey) moved to withdraw his guilty plea. The court questioned Callejas about Hartman's understanding of the plea agreement. As explained by Callejas, Hartman "was nervous about taking the plea, and felt he didn't want to take the plea, and I left that decision to him. * * * [A]fter consulting with * * * his sister, he came to this decision [to accept it]."

{¶ 9} The trial court allowed Callejas to withdraw, and moved on to Hartman's motion to withdraw the guilty plea. Hartman's new attorney cited four reasons in support of Hartman's motion to withdraw the plea: Hartman was in an "improper emotional

state" at the time of the plea because he had just found out that his wife was going to pass away from cancer (and she did pass away less than a month later); his former attorneys had "rushed" and "pushed" Hartman into a plea; Hartman was innocent; and finally, the plea sheet erroneously identified the dismissed charge (negligent assault) as a felony, rather than a misdemeanor and "would have merged with these other offenses [sic]."

{¶ 10} As to the last point, the court questioned Hartman about whether, at the time he pled guilty, he was under the misimpression that the negligent assault charge was a felony. Hartman denied that he was prejudiced by the mistake. Instead, he asserted that he should be allowed to withdraw his plea because he was "innocent." The court went into recess to review the charges set forth in the indictment (which correctly identify negligent assault as a misdemeanor), Hartman's acknowledgement of those precise charges at his arraignment, and the transcript of the plea hearing which documented Hartman's acknowledgment of "the state's willingness to dismiss Count 2 * * * and also * * * the firearms specification associated with Count 1." The court found that, based on the totality of these circumstances, Hartman understood the actual charges against him "as opposed to the typographical error" set forth on the plea sheet. [1] The court also concluded that Hartman's motion to withdraw his guilty plea was motivated by an attempt to delay the proceedings, rather than a sincere claim that his plea was not

---

[1] Hartman does not challenge that finding on appeal, and we leave undisturbed the trial court's conclusion that the typographical error did not provide a reasonable and legitimate basis for the withdrawal of the plea.

6.

knowing or voluntary. The court added that "[t]his case is one of the oldest cases on the docket at this point" and "there's got to come a time when the proceedings come to a conclusion, so we're going to proceed with sentencing here today." The court denied Hartman's motion to withdraw.

{¶ 11} The court sentenced Hartman to 180 days in the county jail (rather than prison), 90 days of which it immediately suspended and 5 years of postrelease and community control. It also imposed a $1,000 fine and $75 in restitution and ordered that Hartman have no firearms on his premises or in his possession. Hartman requested that the court stay the sentence pending his appeal, which the court denied. According to his appellate counsel, Hartman completed his jail sentence. He assigns the following as error:

**Assignment of Error No. I**: The court erred in not allowing a withdrawal of a plea before sentencing.

**Law and Analysis**

{¶ 12} In Hartman's sole assignment of error, he contests the trial court's denial of his presentence motion to withdraw his guilty plea under Crim.R. 32.1.

{¶ 13} Crim.R. 32.1 provides, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Generally, a motion to withdraw a guilty plea is to be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715

7.

(1992). But, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. *Id.* at paragraph one of the syllabus. Rather, "[a] trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* Ultimately, "[t]he decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *Id.* at paragraph two of the syllabus. Accordingly, in order to find that the trial court abused its discretion, a reviewing court must find that the court's ruling was "unreasonable, arbitrary or unconscionable." *Id.* at 527. "What constitutes an abuse of discretion in over-ruling a motion to withdraw a guilty plea will vary with the facts and circumstances of each case." (Quotation omitted.) *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 19. Appellate courts evaluate the trial court's decision based upon the following considerations:

> (1) Whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Cunningham*, 6th Dist. Lucas Nos. L-16-1248, L-16-1249, 2018-Ohio-663,

8.

¶ 29 citing *State v. Murphy*, 176 Ohio App.3d 345, 2008-Ohio-2382, 891 N.E.2d 1255, ¶ 39 (6th Dist.).

**{¶ 14}** "Consideration of the factors is a balancing test, and no one factor is conclusive." *State v. Zimmerman*, 10th Dist. Franklin No. 09AP-866, 2010-Ohio-4087, ¶ 13. However, "[i]n reviewing these factors, it must be remembered that the ultimate question to be answered by the trial court is 'whether there is a reasonable and legitimate basis for the withdrawal of the plea,' * * * and the ultimate question to be answered by the court of appeals is whether the trial court abused its discretion in making this determination." *State v. Burns*, 12th Dist. Butler Nos. CA2004-07-084, CA2004-10-126, 2005-Ohio-5290, ¶ 25, quoting *Xie*. We address each of the nine factors separately.

*(1) Prejudice to the state by Hartman's withdrawal of the plea*

**{¶ 15}** Prejudice to the state "[g]enerally * * * involves one or more witnesses becoming unavailable due to the delay in the trial resulting from the plea withdrawal." *Preston* at ¶ 31, citing *State v. Boyd*, 10th Dist. Franklin No. 97APA12-1640, 1998 Ohio App. LEXIS 4914, *6 (Oct. 22, 1998). Here, there is no evidence that the state would be unfairly prejudiced if Hartman's motion is granted. Therefore, this factor weighs against the state and in favor of Hartman. *See, e.g. State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995) (Characterizing the lack of prejudice to the state as "an extremely important factor" in determining whether the trial court abused its discretion); *overruled on other grounds, State v. Sims*, 1st Dist. Hamilton No. C-160858, 2017-Ohio-8379.

9.

*(2) The representation afforded to Hartman by counsel*

{¶ 16} Hartman challenges the "adequacy" of his counsel who, he claims, "rushed" and "pushed [him] into a plea." We find that the record supports his claim.

{¶ 17} Hartman was represented by four different attorneys in the eight months between his indictment and sentencing. His first attorney withdrew, through no fault of Hartman's, and was substituted by Jennings. Jennings negotiated the plea with the state, but then withdrew, when she took a new job. Hartman's third attorney, Callejas, described his role as "basically filling in for [Jennings]." As he described it, "I entered my appearance * * * just for purposes of taking the plea and sentencing." During the change-of-plea hearing, Callejas said that he and Hartman had not reviewed the written plea agreement. Moreover, the hearing transcript clearly shows Hartman's reluctance to accept the facts as proffered by the state, and further shows Callejas interrupting and talking over Hartman to accept the proffer on Hartman's behalf.

{¶ 18} Two months later, during the hearing to withdraw the plea, Hartman clearly articulated to the court that he had felt pressure, by Jennings and Callejas, to accept the plea. Callejas also told the court that Hartman "didn't want to take the plea."

{¶ 19} Given all of the above, we question whether Hartman received meaningful representation—on the issue of whether to plead guilty—and therefore, whether that plea was entered knowingly and voluntarily. On these facts, we find that the second factor weighs in favor of Hartman.

10.

*(3) The extent of Hartman's Crim.R. 11 plea hearing and (8) whether Hartman understood the nature of the charges and potential sentence*

**{¶ 20}** Crim.R. 11 sets forth the procedural requirements for accepting a guilty plea. These procedural requirements are consistent with constitutional protections afforded a defendant. *State v. Stewart*, 51 Ohio St.2d 86, 88, 364 N.E.2d 116 (1977). Here, although the record demonstrates that the trial court complied with the formal requirements of the rule, it is also clear that Hartman did not grasp the substance of the Crim.R. 11 questions to which he was assenting. We draw this conclusion based on the fact that, at the conclusion of the colloquy, the trial court asked Hartman how he wished to plead, and he responded, "Just trying to get away from him. Guilty, I guess." At that point, the trial court should have conducted a further inquiry as what he meant by "I guess." Instead, the court gave Hartman the choice of pleading guilty or not guilty. Hartman chose guilty, but returned to his refrain of "just trying to get away from him" shortly thereafter. We find that Hartman's equivocation during his colloquy casts doubt on the voluntariness of his plea, and this factor also weighs in favor of Hartman. *Accord, State v. Jones*, 8th Dist. Cuyahoga No. 97674, 2012-Ohio-2512, ¶ 6. (Trial court erred in denying presentence motion to withdraw where the defendant "stated his innocence at the plea hearing and, despite such statements, the trial court subsequently accepted [his] plea without a factual framework to measure his innocence against the willingness to waive trial. [The defendant's] guilty plea was therefore not voluntary.")

*(4) The extent of the hearing on Hartman's motion to withdraw and*
*(5) whether the trial court gave full and fair consideration to the motion*

{¶ 21} "The scope of a hearing on an appellant's motion to withdraw his guilty plea should reflect the substantive merits of the motion." *State v. Eversole*, 6th Dist. Erie Nos. E-05-073, E-05-074, E-05-075, E-05-076, 2006-Ohio-3988, ¶ 14. Here, the transcript indicates that the trial court conducted an extensive hearing on the substantive merits of Hartman's motion, by hearing arguments from both sides, and personally questioning Hartman and Hartman's former counsel regarding the asserted basis for the motion to withdraw. The court also took a recess to review the record before ruling on the motion.

{¶ 22} On the other hand, the trial court was clearly concerned about the age of the case. Twice, it described Hartman's case as the "oldest" on its criminal docket. It also commented that it had previously granted continuances to Hartman, and that it was unwilling to grant him an additional continuance so that his newly retained counsel could become acquainted with the case. The trial court's statements concerning prior continuances erroneously hold Hartman responsible for the delay in the case brought about by the withdrawal of his first two attorneys. The record establishes that these withdrawals were not attributable to any wrongdoing on Hartman's part. Thus, the delay in the case up to that point should not have been held against Hartman. Moreover, Hartman's new counsel indicated that he was prepared to try the case at the first available

12.

date should the court grant the motion, and there were no speedy trial issues that would have complicated a reasonable postponement.

{¶ 23} Based upon the above, we find that the trial court placed an undue emphasis on the age of the case that overshadowed its consideration of the merits of Hartman's motion. Therefore, we find that the fourth and fifth factors weigh in Hartman's favor and against the state.

*(6) Whether the timing of Hartman's motion was reasonable*

{¶ 24} "[U]ndue delay between the occurrence of the alleged cause for a withdrawal of a plea and the filing of the motion is a factor adversely affecting the credibility of the movant and militates against the granting of the motion." *State v. Daly*, 12th Dist. Clermont No. CA2015-06-054, 2015-Ohio-5034, ¶ 26 (Motion that was made the day before the defendant's second sentencing date and two months after she entered her plea was untimely.).

{¶ 25} Here, Hartman requested, by oral motion, to withdraw his guilty plea on the day of his sentencing hearing—which was 42 days after his guilty plea. Hartman made no attempt to explain or justify this delay. We therefore find that the timing of Hartman's motion was not reasonable. The sixth factor weighs against Hartman and in favor of the state.

13.

*(7) The reasons for Hartman's motion to withdraw and (9) whether Hartman was perhaps not guilty or had a complete defense to the charges*

**{¶ 26}** Hartman argues that he should have been allowed to withdraw his plea because he "was confused and did not understand the deal" and because he was experiencing "emotional distress" at the time of the plea hearing, due to his wife's impending death.

**{¶ 27}** "In weighing the ninth factor, 'the trial judge must determine whether the claim of innocence is anything more than the defendant's change of heart about the plea agreement.'" *State v. Davis*, 5th Dist. Richland No. 15CA6, 2015-Ohio-5196, ¶ 19, quoting *State v. Davison*, 5th Dist. Stark No. 2008-CA-00082, 2008-Ohio-7037, ¶ 45. A mere change of heart is not a reasonable basis for a defendant to withdraw his guilty plea. *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988).

**{¶ 28}** Here, Hartman maintained his innocence throughout the proceedings. We find that this is not a case where he exhibited a mere "change of heart" at sentencing. Further, if Hartman's assertion—that he "slipped"—is true, he may indeed have a defense to the charge of felonious assault. We find that the seventh and ninth factors weigh in Hartman's favor.

**Conclusion**

**{¶ 29}** When a defendant claims he is innocent and wishes to withdraw his plea of guilt prior to sentencing, a comparison of the interests and potential prejudice to the respective parties weigh heavily in the interests of the accused. Here, we find that, of the

14.

nine factors used to evaluate whether a motion to withdraw should be granted, eight of them weigh in favor of granting Hartman's motion. We further find that they outweigh the only factor (the timeliness of the motion) in favor of the state. "[I]n such a situation we have the inconvenience to the state of proving the guilt of a defendant at trial versus the possibility that a person has pled guilty to a crime [he] did not commit. Absent any showing of some other real prejudice to the state which occurred solely as a result of entering into a plea bargain, as here, the potential harm to the state in vacating the plea is slight, whereas the potential harm to the defendant in refusing to vacate the plea is great." *State v. Cuthbertson*, 139 Ohio App.3d 895, 2000-Ohio-2638, 746 N.E.2d 197, ¶ 21 (7th Dist.)

{¶ 30} After considering all of the above factors, we find that the trial court acted unreasonably in denying Hartman's Crim.R. 32.1 motion to withdraw his guilty plea. Therefore, we find Hartman's assignment of error well-taken. This case is reversed and remanded to the trial court with orders to allow Hartman to withdraw his plea of guilty to the felonious assault charge and to vacate the plea agreement which was based upon the plea. The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

James D. Jensen, J.

_____

Christine E. Mayle, P.J.
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.