[Cite as *State v. Ybarra*, 2019-Ohio-4824.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Perrysburg         Court of Appeals No. WD-19-006

     Appellee                        Trial Court No. CRB 1801581

v.

Ricardo Ybarra                      **DECISION AND JUDGMENT**

     Appellant                      Decided:  November 22, 2019

* * * * *

Chynna L. Fifer, City of Perrysburg Prosecutor, for appellee.

Michael B. Kelley, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Ricardo Ybarra, appeals the February 4, 2019 judgment of the Perrysburg Municipal Court denying his motion to withdraw his plea of no contest.  For the reasons that follow, we affirm the trial court judgment.

**I.  Background**

{¶ 2} On December 4, 2018, Ricardo Ybarra was charged in Perrysburg Municipal Court with domestic violence, a violation of R.C. 2919.25(A), a first-degree

misdemeanor, and unauthorized use of a vehicle, a violation of R.C. 2913.03(A), also a first-degree misdemeanor. He entered a plea of not guilty on December 12, 2018. On December 14, 2018, the matter was set for a pretrial, however, Ybarra elected that day to enter a plea of no contest to the domestic-violence charge, in exchange for dismissal of the charge of unauthorized use of a vehicle. The Perrysburg Municipal Court judge accepted Ybarra's plea and made a finding of guilt. She continued the case for sentencing so that a presentence investigation report ("PSI") could be prepared.

{¶ 3} On December 21, 2018, Ybarra moved to withdraw his plea of no contest. Soon thereafter, a new judge was appointed to the Perrysburg Municipal Court. Following a hearing on January 4, 2019, the new Perrysburg Municipal Court judge denied Ybarra's motion. The matter proceeded to sentencing, and the court imposed a jail term of 180 days in the Wood County Justice Center.

{¶ 4} Ybarra appealed. We determined that the January 4, 2019 judgment entry was not final and appealable because it failed to state that Ybarra was found guilty and convicted of the offense. We remanded the case to the trial court for entry of a final appealable order. The court entered an amended judgment on February 4, 2019, and we reinstated the appeal to our docket.

{¶ 5} Ybarra assigns the following errors for our review:

I. Appellant's motion to withdraw his no contest plea should have been granted, and the court abused its discretion.

2.

II. Appellant's no contest plea was not knowingly, intelligently and voluntarily entered.

## II. Law and Analysis

{¶ 6} Ybarra argues in his first assignment of error that the trial court abused its discretion in denying his motion to withdraw his no-contest plea. He argues in his second assignment of error that his plea should be vacated because it was not entered knowingly, intelligently, and voluntarily. We consider each of these assignments in turn.

### A. The trial court did not abuse its discretion in denying Ybarra's motion to withdraw his no-contest plea.

{¶ 7} The trial court denied Ybarra's motion to withdraw his plea of no contest. It found that Ybarra understood the court process and what was happening at the time of his plea, and it concluded that Ybarra had exhibited mere "buyer's remorse." In his first assignment of error, Ybarra argues that the trial court abused its discretion.

{¶ 8} Crim.R. 32.1 governs the withdrawal of a plea of guilty or no contest and provides that such motion "may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The Ohio Supreme Court has recognized that "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Nevertheless, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *Id.* at paragraph one of the syllabus.

3.

**{¶ 9}** While Crim.R. 32.1 does not specify the circumstances under which a presentence motion to withdraw may be granted, Ohio courts typically evaluate nine factors when considering such a motion:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge.

*State v. Murphy*, 176 Ohio App.3d 345, 2008-Ohio-2382, 891 N.E.2d 1255, ¶ 39 (6th Dist.), citing *State v. Griffin*, 141 Ohio App.3d 551, 554, 752 N.E.2d 310 (7th Dist.2001) ("*Griffin* factors"). A mere change of heart is not a sufficient reason to permit withdrawal of a plea. (Citations omitted.) *State v. Acosta*, 6th Dist. Wood No. WD-15-066, 2016-Ohio-5698, ¶ 18.

**{¶ 10}** Upon the filing of a motion to withdraw a plea, the trial court "must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie* at paragraph one of the syllabus. It is then left to the discretion of the trial court whether to allow the defendant to withdraw his or her plea.

4.

*Id.* at paragraph two of the syllabus. We will reverse the trial court's decision only where there has been an abuse of that discretion. *Id.* at 527.

{¶ 11} Ybarra maintains that at the plea hearing, he responded that he understood the effect of his plea only after the court explained it to him four times. Even after that, he claims, he told the judge that he did not understand that he may be prohibited under federal law from owning or possessing firearms. Ybarra explains that while he speaks English, he does not read or write English, and he signed a rights form without reading it. He insists that he is innocent and he maintains that at the time he entered his plea, he was nervous, confused, and embarrassed. Ybarra contends that his confusion by the court process was further demonstrated when, at the motion hearing, he "babble[d] senselessly" about double jeopardy, indicated that he only "kind of" understood the effects of withdrawing his plea, asked the court to amend the charges at an inappropriate time, and requested OR bond at an inappropriate time.

{¶ 12} The city maintains that the newly-appointed municipal court judge reviewed the video recordings from the arraignment and plea hearing, held a hearing, and considered the relevant case law and factors before denying Ybarra's motion. While it concedes that the motion was timely filed and that it would not be prejudiced by withdrawal of the plea, it insists that Ybarra had competent counsel who stopped the hearing when necessary to explain things to him, the court ensured that Ybarra understood the difference between the possible pleas, and the court explained the potential sentence that could be imposed. The city claims that Ybarra did not assert

5.

innocence at the plea hearing, and was concerned only with whether it would be "better" to enter a plea of guilty or no contest. It contends that the court properly concluded that Ybarra understood the plea and had merely experienced "buyer's remorse" after entering the plea.

{¶ 13} After reviewing the hearing transcripts, the video recordings, and the arguments of the parties, we resolve the nine *Griffin* factors as follows.

{¶ 14} *Prejudice to the state.* While the city objected to Ybarra's motion, it did not indicate that it would be prejudiced if Ybarra were permitted to withdraw his plea. It concedes on appeal that it would not be prejudiced. This factor, therefore, weighs in favor of allowing Ybarra to withdraw his plea.

{¶ 15} *Representation afforded to the defendant by counsel*. The trial court found that Ybarra was represented by competent defense counsel who reviewed Ybarra's rights with him, including his right to a trial. We agree with the court's conclusion, and we find that this factor weighs against allowing Ybarra to withdraw his plea.

{¶ 16} *The extent of the Crim.R. 11 plea hearing and whether the defendant understood the nature of the charges and potential sentences*. Ybarra initially planned to enter a plea of guilty to the domestic violence charge. The trial court told him that it would be a complete admission to the charge, so Ybarra asked if he could plead no contest because he just wanted "to resolve the matter." He asked whether that would be the same thing. A brief recess was taken, during which the city consented to allowing

6.

Ybarra to enter a no-contest plea instead of a guilty plea. The court and Ybarra engaged in the following exchange:

The court: Mr. Ybarra, do you understand that with a no contest plea, you're not admitting guilt, but you are accepting as true any statements contained in the charge or stated in court?

The defendant: Yes, ma'am.

The court: And based on that plea then, the Court would – could find you guilty and sentence you up to 180 days in the Wood County Justice Center, up to a $1,000 fine, do you understand that?

The defendant: Not really. I just want the best thing and I want this resolved. * * * So, I mean, I don't know what is better, the no contest or just pleading guilty.

The court: I'm just telling you the effect of the plea. The no contest plea would not be used against you in a later civil or criminal matter. Even though the plea would not be used against you, a conviction on this charge could be used in the future to enhance a similar offense to a felony. Do you understand that a domestic violence charge is an enhanceable offense? If you're convicted of the charge and in the future charged with a similar offense, that similar offense would be enhanced to a felony.

The defendant: I will just plead guilty.

* * *

7.

The court: The difference between a guilty plea is that is a complete admission, yes, I did it. The difference between a no contest plea is, you're not admitting that you did it, but you're not going to argue the facts of the case.

The defendant: Then that's what I want to do.

* * *

The court: So, just let me – for the record – go through once again the no contest plea. You're not admitting guilt, but you are accepting as true the statements contained in the charge or stated in court. The no contest plea would not be used against you in a later civil or criminal matter, do you understand.

The defendant: Yes, ma'am.

The court: All right. The effect of the plea. I do need to go over that this is an enhanceable offense. The plea would not be used against you, but a conviction could be used against you to enhance a future domestic violence or similar offense to a felony, do you understand?

The defendant: Yes, ma'am.

The court: With this charge and a conviction on this charge, you could be prohibited under federal law from owning or possessing any firearms or weapons, do you understand that?

The defendant: I don't. Yes, ma'am.

The trial court also confirmed that Ybarra is an American citizen and that he was not under the influence of any illegal drugs or alcohol.

{¶ 17} The trial court concluded that the only concern exhibited by Ybarra during the plea hearing was the difference between a no contest and a guilty plea. We agree with that assessment, and we conclude that the judge who accepted Ybarra's plea patiently described the difference to Ybarra until he understood. There appeared to be no language barrier affecting Ybarra's understanding of the proceedings. And to the extent that Ybarra initially responded "I don't" when the judge asked him if he understood that he could be prohibited from owning or possessing a firearm, our review of the video recording convinces us that Ybarra was responding that he does not own or possess a firearm—not that he did not understand that he may be prohibited from owning or possessing them if convicted. In fact, he interrupted the court, such that the exchange that took place more accurately reads as follows:

> The court: With this charge and a conviction on this charge, you could be prohibited under federal law from owning or possessing any firearms or weapons * * *
>
> [Defendant interrupts]: I don't.
>
> [Court continues]: * * * do you understand that?
>
> [Defendant responds]: Yes, ma'am.

{¶ 18} We, therefore, conclude that Ybarra's Crim.R. 11 plea hearing was extensive, and that he understood the nature of the charges, the potential sentence, and the effect of his plea. These factors weigh against allowing Ybarra to withdraw his plea.

{¶ 19} *The extent of the hearing on the motion to withdraw and whether the trial court gave full and fair consideration to the motion.* The newly-appointed municipal court judge conducted a full hearing at which both Ybarra and his counsel were permitted to speak. The court had clearly reviewed all materials pertinent to Ybarra's motion, including video recordings of the arraignment and plea hearing, and it asked thoughtful questions. It ultimately concluded that Ybarra's only confusion was over whether it was more beneficial for him to enter a plea of "guilty" or "no contest," and observed that the trial judge who accepted his plea explained this to him "ad nauseam" until Ybarra understood. Having reviewed the same materials reviewed by the trial judge, we agree with the court's conclusion and we find that these factors weigh against allowing Ybarra to withdraw his plea.

{¶ 20} *The timing of the motion.* The motion was filed one week after Ybarra entered his plea and ten days before the date originally scheduled for the sentencing hearing. The city concedes that the timing of his motion was reasonable. This factor weighs in favor of allowing Ybarra to withdraw his plea.

{¶ 21} *The reasons for the motion.* Ybarra claimed in his motion that he did not know what was going on at the time of entering his plea. He maintained that he was confused as to the nature of the plea and "did not understand he was admitting guilt."

10.

Ybarra insisted that he was too embarrassed and nervous to ask too many questions of defense counsel, so "he agreed at times with Counsel and the Court out of a desire to be socially pleasing." He indicated that after returning to the jail, speaking with other inmates, reading in the library, and meeting with probation, it became clear to him "that he made admissions." Ybarra also summarily stated that "[he] is innocent and wishes to have a trial," without any further explanation.

{¶ 22} At the plea hearing, however, Ybarra demonstrated eagerness to resolve the charges. Indeed, Ybarra never wavered in his desire to enter a plea that would resolve the case; he merely questioned whether he should plead guilty or no contest. The court fully explained the difference to Ybarra until he understood. And despite Ybarra's contention that it was not until later that it became clear to him "that he made admissions," the court specifically advised him that by his plea, he would not be admitting guilt, but rather would be "accepting as true any statements contained in the charge or stated in court." We agree with the trial court that Ybarra exhibited a mere change of heart, or, in the court's words, "buyer's remorse." This factor weighs against allowing Ybarra to withdraw his plea.

{¶ 23} *Whether the accused was perhaps not guilty or had a complete defense to the charge*. As stated, at the plea hearing, Ybarra made clear that he entered the plea because he wished to resolve the matter quickly. He did not profess his innocence, or make any equivocal statements in that regard, on the record. This case is unlike *State v. Hartman*, 6th Dist. Huron No. H-17-014, 2018-Ohio-4452, ¶ 6, in which the defendant

11.

repeatedly disputed the state's version of events at the plea hearing and, when asked how he wished to plead to the charge of felonious assault, attempted to explain that he was "[j]ust trying to get away from him. Guilty, I guess."

{¶ 24} Regardless, a court's consideration of this factor is not limited to whether the accused maintained his innocence but, rather, whether the "accused was perhaps not guilty or had a complete defense to the charge." Here, Ybarra never admitted assaulting the victim. He ultimately maintained that she inflicted injury upon herself while under the influence of drugs in order to blackmail him into staying with her and to convince him to obtain more drugs for her. The issue of Ybarra's guilt is entirely factual and, if this matter went trial, would depend largely upon the jury's determinations of witness credibility. We therefore find that this factor weighs neither for nor against Ybarra.

{¶ 25} Considering the *Griffin* factors as a whole, we conclude that the trial court did not abuse its discretion when it denied Ybarra's motion to withdraw his plea. Ybarra was represented by competent counsel, his Crim.R. 11 plea hearing and hearing on his motion to withdraw his plea were extensive, he understood the nature of the charges and potential sentence, and the trial court gave full and fair consideration to his motion. We agree with the trial court that Ybarra exhibited a mere change of heart. We find that the trial court did not abuse its discretion in denying his motion, and we find his first assignment of error not well-taken.

## B.  Ybarra's plea was entered knowingly, intelligently, voluntarily.

{¶ 26} In his second assignment of error, Ybarra argues that the trial court erred in accepting his plea because it was not entered knowingly, intelligently, and voluntarily. For the most part, his arguments mirror those made in support of his first assignment of error.  But he also adds that the trial court failed to advise him of his trial rights, including the "right to jury or court trial, cross-exam, subpoena own witnesses, presumption of innocence, right to remain silent, State burden of proof [sic]."

{¶ 27} Ybarra cites Crim.R. 11(C) as setting forth the advisements necessary to render his plea knowing, intelligent, and voluntary.  But Crim.R. 11(C) governs pleas of guilty and no contest in *felony* cases.  Ybarra entered a plea to a *misdemeanor*.[1]

{¶ 28} The advisements required for misdemeanors under Crim.R. 11 depend on whether the misdemeanor is a "serious offense" or a "petty offense."  Crim.R. 2(C) defines "serious offense" as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months."  A petty offense is defined under Crim.R. 2(D) as "a misdemeanor other than [a] serious offense."  Because Ybarra entered a plea to a first-degree misdemeanor, punishable by up to 180 days in jail, the offense at issue is considered "petty" and Crim.R. 11(E) sets forth the necessary advisements.

{¶ 29} Under Crim.R. 11(E), "the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect

---

[1] The city also incorrectly cites the rule applicable to felony cases.

13.

of the plea of guilty, no contest, and not guilty." Under the plain language of the rule, the trial court was required "to do one thing before accepting a plea of guilty or no contest in a petty offense case, 'inform[ ] the defendant of the effect of the plea[.]'" *See State v. Higby*, 9th Dist. Wayne No. 10CA0054, 2011-Ohio-4996, ¶ 4, quoting *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, paragraph one of the syllabus.

{¶ 30} Crim.R. 11(B)(2) explains the effect of a no-contest plea: "The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." *See Higby* at ¶ 4, quoting *Jones* at paragraph two of the syllabus ("Criminal Rule 11(E)'s 'effect of the plea' language refers to Criminal Rule 11(B), which is titled '[e]ffect of guilty or no contest pleas[.]'").

{¶ 31} As fully explained in our discussion of Ybarra's first assignment of error, the trial court explained to Ybarra the effect of his plea. Ybarra expressed that he understood the effect of his plea. We, therefore, conclude that the trial court made the advisements necessary under Crim.R. 11(E) to render Ybarra's plea knowing, intelligent, and voluntary.

{¶ 32} We find Ybarra's second assignment of error not well-taken.

### III.  Conclusion

{¶ 33} Our review of the nine *Griffin* factors leads us to conclude that the trial court did not abuse its discretion when it denied Ybarra's motion to withdraw his guilty

14.

plea. We also conclude that the trial court properly explained the effect of his no contest plea as required under Crim.R. 11(E) and ensured Ybarra's understanding of the effects of his plea, thus his plea was entered knowingly, intelligently, and voluntarily.

{¶ 34} Accordingly, we find Ybarra's two assignments of error not well-taken. We affirm the February 4, 2019 judgment of the Perrysburg Municipal Court. Ybarra is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                        _____
                                                                   JUDGE
Christine E. Mayle, P.J.
CONCUR.                                        _____
                                                                   JUDGE

Gene A. Zmuda, J.,
DISSENTS.

**ZMUDA, J., dissenting:**

{¶ 35} Because I conclude that the trial court abused its discretion by denying Ybarra's presentence motion to withdraw his guilty plea without exploring his claim of innocence at the change of plea hearing, I must respectfully dissent.

{¶ 36} In *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), the Supreme Court of Ohio directed that a trial court "must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus. In the motion to withdraw that Ybarra filed with the trial court, he asserted that he wished to withdraw his guilty plea because he felt pressured to enter into it despite being innocent. Importantly, Ybarra has consistently maintained his innocence throughout the duration of these proceedings.

{¶ 37} Despite the claim of innocence articulated in Ybarra's motion to withdraw, defense counsel did not raise Ybarra's innocence at the withdrawal hearing, and the trial court did not question Ybarra on the innocence issue. Instead, the trial court focused exclusively on the extent to which Ybarra understood the plea proceedings. Admittedly, defense counsel indicated at the beginning of the withdrawal hearing that Ybarra did not understand what he was doing at the time of the plea, so I find that the trial court appropriately examined that issue. However, entitlement to withdraw a plea presentence is not limited to situations in which the plea was the product of a defendant's misunderstanding. Such a motion may also be granted for other reasons, including a defendant's claim of innocence.

{¶ 38} Trial counsel did not articulate the innocence claim at the hearing, but that claim was prominent within the written motion to withdraw. Moreover, Ybarra's claim of innocence is clearly articulated in the presentence investigation report, which was not referenced by the trial court at the hearing. Thus, I find it problematic that the trial court

16.

failed to also address Ybarra's claim of innocence, which was the most persuasive basis for Ybarra's motion to withdraw.

{¶ 39} I find that the trial court's failure to consider Ybarra's claim of innocence is especially troubling given the fact that Ybarra's motion to withdraw was filed presentence. As noted by the majority in its analysis, presentence motions to withdraw are to be freely and liberally granted. *Xie* at 527. Under this liberal standard, trial courts should be required to at least address a movant's claim of innocence. Indeed, we have previously stated that "[w]hen a defendant claims he is innocent and wishes to withdraw his plea of guilt prior to sentencing, a comparison of the interests and potential prejudice to the respective parties weigh heavily in the interests of the accused." *State v. Hartman*, 6th Dist. Huron No. H-17-014, 2018-Ohio-4452, ¶ 29. Failing to address a defendant's claim of innocence renders the withdrawal hearing mandated by *Xie* ineffective, because the court has not satisfied its obligation to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. *Id.* at ¶ 21; *see also State v. Eversole*, 6th Dist. Erie Nos. E-05-073, 2006-Ohio-3988, ¶ 14 ("The scope of a hearing on an appellant's motion to withdraw his guilty plea should reflect the substantive merits of the motion.").

{¶ 40} Our decision in *Hartman* is compelling because the trial court in that case actually "conducted an extensive hearing on the substantive merits of Hartman's motion, by hearing arguments from both sides, and personally questioning Hartman and Hartman's former counsel regarding the asserted basis for the motion to withdraw."

17.

*Hartman* at ¶ 21. Despite that hearing, this court correctly found that the trial court failed to give full and fair consideration to the motion. *Id*. at ¶ 23.

{¶ 41} Here, the trial court's hearing consisted of confirming that the Crim.R. 11 plea colloquy was proper. Indeed, the record reveals that the trial court failed to ask Ybarra or his counsel *why* he was seeking to withdraw his plea. The trial court concluded that Ybarra's motion to withdraw was motivated by a change of heart, without first addressing the reasons offered by Ybarra in support of his request to withdraw his plea. In its analysis of the *Griffin* factors, the majority examines Ybarra's claim of innocence, ultimately concluding that it rests upon factual considerations that neither weigh for or against Ybarra. While the majority's conclusion may be reasonable, it does not overcome the fact that the trial court failed to conduct the proper analysis. Without an inquiry into Ybarra's claim of innocence, I find that the trial court's change of heart conclusion was arbitrary and unreasonable. *See Hartman* at ¶ 28 (rejecting the notion that a defendant merely had a change of heart where he maintained his innocence throughout the proceedings). Consequently, I would hold that the trial court abused its discretion in denying Ybarra's motion and reverse.

{¶ 42} Because the majority holds otherwise, I must respectfully dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.